ALEXANDER B. CVITAN (SBN 81746) and
E-mail: alc@rac-law.com
AARON G. LAWRENCE (SBN 258813)
E-mail: aaronl@rac-law.com;
REICH, ADELL & CVITAN, A Professional Law Corporation
330 N. Brand Blvd., Suite 250
Glendale, CA 91203
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE ANDERSON ENTERPRISES, INC. D/B/A A'S CONSTRUCTION,<br><br>Defendant. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>**1. MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**<br><br>**2. SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**<br><br>**3. INJUNCTIVE RELIEF COMPELLING SUBMISSION OF FRINGE BENEFIT CONTRIBUTIONS TO EMPLOYEE BENEFIT PLANS**<br><br>[29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185] |

## JURISDICTION AND VENUE

1.      This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer.  It is brought in accordance with the terms and conditions of the plans, the collective bargaining agreements to which the

employer is bound, and applicable statutes to: (a) recover unpaid monthly employee fringe benefit contributions and related damages due to the plans by the employer through enforcement of the terms of the collective bargaining agreements and the plans (Claim 1), (b) compel the employer to produce records for an audit to determine if additional amounts are due (Claim 2); and (c) compel the employer to timely and fully report and pay its monthly fringe benefit contributions to the plans on behalf of its employees (Claim 3).  This Court has jurisdiction pursuant to sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1132(g)(2) and 1145; section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3); and section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185.  Pursuant to ERISA section 502(e)(2), 29 U.S.C. § 1132(e)(2), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

## PARTIES

2.     Plaintiff ("CLTF") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the following employee benefit plans: Laborers Vacation, Holiday, and Sick Pay Trust Fund; Construction Laborers Pension Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Laborers Health and Welfare Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund For Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (collectively "Trust Funds").  The Trust Funds are express trusts created by written agreements; employee benefit plans within the meaning of ERISA section 3(3), 29 U.S.C. § 1002(3); and multi-employer

plans within the meaning of ERISA section 3(37)(A), 29 U.S.C. § 1002(37)(A). The Trust Funds exist pursuant to ERISA and LMRA section 302, 29 U.S.C. § 186. CLTF and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

3. CLTF is a fiduciary as to the Trust Funds, in that it:

A. Exercises discretionary authority or discretionary control respecting the collection of delinquent (or possibly delinquent) contributions to the Trust Funds, including but not limited to discretion in auditing employers, deciding what claims to assert, acting as agent of the Trust Funds in asserting claims, waiving liquidated damages, settling claims, and releasing claims; and

B. Exercises authority or control respecting management or disposition of assets of the Trust Funds, including but not limited to, receiving delinquent contributions collected and holding them in a bank account in its own name over which it has check-writing authority, and then exercising discretion in allocating those assets among the different Trust Funds, different participants, different time periods and different jobs.

4. CLTF is informed and believes, and on that basis alleges, that defendant BRUCE ANDERSON ENTERPRISES, INC. ("Employer") is a corporation organized and existing under the laws of the State of California that does business as "A's Construction"; has a principal place of business in the City of Santa Ana, County of Orange, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

/ / /
/ / /
/ / /

# OTHERS

5. The Southern California District Council of Laborers and its affiliated Local Unions (collectively "Laborers Union") is, and at all relevant times was, a labor organization representing employees affecting interstate commerce. The Laborers Union is not a party to this action.

# AGREEMENTS

6. The Employer is, and at all relevant times was (including from at least since July 1, 2021, and all times during which the events giving rise to the liabilities alleged in this complaint occurred, bound to certain collective bargaining agreements of the Laborers Union, including the Laborers' Short-Form Agreement for the Construction Industry, as well as the Laborers Union's Construction Master Labor Agreements incorporated by reference therein, including one known as the Southern California Master Labor Agreement.

7. Pursuant to the Construction Master Labor Agreements, employers become – and the Employer became and is – bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements"). When referenced collectively hereinafter, the Construction Master Labor Agreements and Trust Agreements are referred to as "the Agreements."

8. The Agreements require employers, including the Employer, to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid for) their employees who perform work covered by the Agreements ("Covered Work").

9. The Agreements require employers, including the Employer, to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports"). The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

10. The Agreements require employers, including the Employer, to pay interest on delinquency Monthly Contributions. Under the Construction Master Labor Agreements and Trust Agreements, the trustees of the Trust Funds have the authority to set the interest rate and have set it at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California. The Agreements also require employers, including the Employer, to pay liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater. In addition, employers are required to pay fees for the submission of dishonored checks.

11. The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and their participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify. Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise

been entitled to had it not been for the delinquency of their employer. The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid. It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

12. The Agreements require employers, including the Employer, to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed. If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in an amount equal to the Monthly Contributions that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon).

13. The Agreements require, employers, including the Employer, to refrain from subcontracting Covered Work to entities that are delinquent to the Trust Funds. If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for the Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

14. The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the Employer, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds. The Agreements further provide that employers, including the Employer, must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional

amounts due, and that the employer must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds. The Trust Funds have delegated the authority to perform such audits to CLTF.

15. The Agreements require employers to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

## FIRST CLAIM FOR RELIEF

**Against the Employer for Monetary Damages Due to Employee Benefit Plans**

[29 U.S.C. §§ 185, 1132(g)(2) and 1145]

16. CLTF repeats, realleges and incorporates by reference each and every allegation contained in this Complaint above as if fully set forth here.

17. CLTF is informed and believes and based on such information and belief alleges that Employer employed workers who performed services covered by the Agreements and failed to pay the rates specified in the Agreements to certain Trust Funds on behalf of those workers for each hour worked (or paid for) by employees performing services covered by the Agreements. Due to Employer's refusal or failure to comply with a complete audit of its payroll and business records and its continuing obligation to submit Monthly Reports, additional amounts may be discovered and become due and owing by Employer that cannot be ascertained at this time. Said amounts will be established by proof at the trial or other hearing.

18. All conditions to Employer's obligations to make payments under the Agreements have been met.

19. As a result of Employer's failure to timely submit Monthly Contributions due by it to the Trust Funds, pursuant to the Agreements and ERISA sections 502(g)(2) and 515, 29 U.S.C. §§ 1132(g)(2) and 1145, Plaintiff is informed and believes and thereupon alleges that the Employer owes the Trust Funds a known amount of $38,233.19 for unpaid or late-paid Monthly Contributions and related damages (and/or late-submitted Monthly Reports) for the months of September 2021 through September 2024 ("Known Delinquency"). The Known Delinquency consists of: $17,794.02 in unpaid Monthly Contributions; $4,491.17 in interest (through February 28, 2025); $18,668.00 in liquidated damages; and $1,280.00 in audit fees; while taking into account a $4,000 credit on the Employer's account in connection with a payment to CLTF received from Employer's license bond surety to cover a portion of Employer's delinquency.

20. The failure of the Employer to pay Monthly Contributions when due causes harm to the Trust Funds and their participants, which is impractical to accurately quantify. This may include the cost of collecting the Monthly Contributions from the Employer or third parties (not including the costs of this litigation), the cost of special processing to restore benefit credits because of late Monthly Contributions, the temporary loss of insurance coverage by employees (even if later restored) and medical harm to participants and beneficiaries who may have foregone medical care when notified that medical insurance ceased because of their employer's failure to pay Monthly Contributions. The liquidated damages provision of the Agreements was meant to compensate for this unquantifiable loss, and is based on the ratio of collection costs over amounts collected, regularly reported to the Trustees. The Trustees of the Trust Funds have the authority, in their discretion, to waive all or part of these liquidated damages. In this case, they have exercised their discretion by declining to waive any liquidated damages.

21. CLTF will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the Employer, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the Employer (or lower-tier subcontractors). If deemed necessary by the Court, CLTF will amend its complaint to add any additional amounts determined to be due. Any and all conditions to the Employer's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

22. Under the terms of the Agreements and ERISA section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D), CLTF is entitled to an award of its attorneys' fees and costs.

23. Under Sections 515 and 502(g) of ERISA, EMPLOYER is liable to the TRUST FUNDS not only for the amount of delinquent MONTHLY CONTRIBUTIONS but also (a) for pre-judgment and post-judgment interest on the delinquent sums (as provided for in Section 502(g) of ERISA); (b) for the higher of interest or liquidated damages (as provided for in Section 502(g) of ERISA); (c) for attorneys' fees; and (d) for other relief permitted by Section 502(g) of ERISA.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## SECOND CLAIM FOR RELIEF

**Against the Employer for Specific Performance of Obligation**

**to Produce Records for Audit**

[29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E)]

24. CLTF repeats, realleges and incorporates by reference each and every allegation contained in this Complaint above as if fully set forth here.

25. CLTF requested that the Employer produce its books and records for audit. CLTF has completed a partial audit of the Employer's records. However, the Employer has refused to fully comply with CLTF's request and has not produced all of its books and records necessary for the audit, and so CLTF has been unable to determine the full extent of the amounts due by Employer to the Trust Funds. Therefore, a complete audit of the Employer's payroll and business records is needed in order to determine the full extent of any amounts due by Employer to the Trust Funds.

26. The Trust Funds have no adequate or speedy remedy at law in that the Employer has only produced partial payroll records and refuses to fully comply with the audit of all payroll and business records to necessary to complete the audit and Trust Funds have no other way to determine the full amounts owed by the Employer.

27. CLTF requests that the Court exercise its authority under ERISA sections 502(a)(3) and (g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and (g)(2)(E) to order the Employer to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for CLTF to complete an audit to determine if additional amounts are due.

28. An award of attorneys' fees and costs is provided for by Agreements and

under ERISA sections 502(g)(1) and/or (g)(2), 29 U.S.C. § 1132(g)(1) and/or (g)(2).

### THIRD CLAIM FOR RELIEF

**Against the Employer for Injunctive Relief Compelling Submission of Fringe Benefit Contributions to Employee Benefit Plans**

[29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E)]

29. CLTF repeats, realleges and incorporates by reference each and every allegation contained in this Complaint above as if fully set forth here.

30. The Employer has repeatedly failed to timely submit Monthly Reports and Monthly Contributions.

31. By reason of the Employer's failure to comply with its Monthly Reporting and Contribution obligations, the Trust Funds, its participants and/or its beneficiaries have suffered and will continue to suffer hardship and actual and impending irreparable injury and damage for at least the following reasons. First, the Trust Funds must provide credit each month to participants and beneficiaries, including the Employer's employees, toward eligibility for fringe benefits (such as health insurance and pensions) based on the number of hours they worked, which is determined from Monthly Reports. Second, the amount of benefits payable to all participants and beneficiaries for health insurance and pension claims, including those employed by the Employer, is actuarially determined on the basis of funds projected to be received from contributing employers (including the Employer). Third, health insurance is not provided to participants and beneficiaries, including the Employer's employees, after a certain period of non-payment of Monthly Contributions on their behalf. Fourth, vacation pay, which is distributed by the Construction Laborers Vacation Trust for Southern California (one of the Trust

Funds), is not paid to employees, including the Employer's employees, for hours of work for which their employer has not submitted Monthly Contributions.  Fifth, the Trust Funds have a legal obligation to take steps to collect amounts due by delinquent employers and thus the Employer's ongoing delinquency results in an ongoing drain on Trust Funds resources.  And, in addition, the failure of the Employer to itemize its work by project undermines the Trust Funds' ability to take steps to collect delinquent amounts through asserting project-specific claims, such as payment bond claims, stop payment notices and mechanics' liens.  Sixth, the Trust Funds lose investment income on late-paid and unpaid Monthly Contributions.

32.   64.   Sections 502(a)(3) and 502(g)(2)(E) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(E), specifically authorizes this Court to enter injunctive relief under the present circumstances.  The Trust Funds have no adequate or speedy remedy at law.  They therefore request that this Court exercise its authority under ERISA sections 502(a)(3) and (g)(2)(E), 29 U.S.C. §§ 1132(a)(3) and (g)(2)(E), to issue preliminary and permanent injunctive relief ordering the Employer to comply with its obligations under the Agreements and ERISA section 515, 29 U.S.C. § 1145, to fully disclose its employees' Covered Work on its Monthly Reports, itemized by project, and timely submit them each month with full payment of the Monthly Contributions due.

33.   An award of attorneys' fees and costs is provided for by Agreements and under ERISA sections 502(g)(1) and/or (g)(2), 29 U.S.C. § 1132(g)(1) and/or (g)(2)).

/ / /
/ / /
/ / /
/ / /
/ / /

**WHEREFORE, CLTF prays for judgment as follows:**

ON CLTF'S FIRST CLAIM FOR RELIEF

[Against the Employer for Monetary Damages Due to Employee Benefit Plans]

A. For $17,794.02 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B. For $4,491.17 in interest through February 28, 2025 on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from March 1, 2025, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C. For $18,668.00 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D. For $1,280.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E. Minus a credit of $4,000 on the Employer's account with the Trust Funds reflecting a payment received from Employer's license bond surety in connection with Employer's delinquencies.

F. For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, insufficient funds check fees, and amounts owed as a result work performed by any subcontractors of the Employer (or lower-tier

subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

G. For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

H. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON CLTF'S SECOND CLAIM FOR RELIEF

[Against the Employer for Specific

Performance of Obligation to Produce Records for Audit]

A. For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the Employer and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the Employer's records from at least July 1, 2021, to fully cooperate with CLTF with respect to the audit in order for CLTF to determine the total amount due to the Trust Funds by the Employer, and, specifically, to produce to CLTF the following payroll and business records – and any other records determined by CLTF to be necessary to conduct a full audit – for inspection, examination and copying:

    A.1. All of the Employer's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the Employer, its employees, its subcontractors, its lower-tier subcontractors and the employees of the Employer's subcontractors and lower-tier subcontractors,

including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the Employer, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the Employer, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

      A.2.   All of the Employer's job files for each contract, project or job on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the Employer and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other records that relate to the supervision of the Employer's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

      A.3.   All of the Employer's records related to cash receipts, including but not limited to the Employer's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for

all contracts, projects and jobs on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

   A.4. All of the Employer's bank statements, including but not limited to those for all checking, savings and investment accounts;

   A.5. All of the Employer's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

   A.6. All collective bargaining agreements between the Employer and any trade union, and all records of contributions by the Employer to any trade union trust fund; and

   A.7. All records related to the formation, licensing, renewal or operation of the Employer.

 B. For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

 C. For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3).

/ / /
/ / /
/ / /
/ / /

<u>ON CLTF'S THIRD CLAIM FOR RELIEF</u>

[Against the Employer for Injunctive Relief Compelling Submission of Fringe Benefit Contributions to Employee Benefit Plans]

      A.    For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the Employer and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to deliver, or cause to be delivered to the Trust Funds:

      A.1.    All past due monthly fringe benefit contribution report forms due by the Employer to the Trust Funds, fully completed to indicate hours of work performed by the Employer's employees for which fringe benefit contributions are due by the Employer and the corresponding amounts of fringe benefit contributions due by the Employer to the Trust Funds, if any, or, if no such hours of work were performed for a given month, an indication on the report form of that fact.

      A.2.    No later than 4:30 p.m. on the 15th day of each month for the duration of the Agreements:

      A.2(a).    Truthfully and accurately completed Monthly Report(s) covering all of the Employer's accounts with the Trust Funds, collectively identifying all persons for whom Monthly Contributions are owed to the Trust Funds for the previous month and their Social Security numbers, and, itemized by person and project, the hours of work performed for which Monthly Contributions are due;

      A.2(b).    An affidavit or declaration from a managing officer or other managing agent of the Employer attesting under penalty of perjury to the

completeness, truthfulness and accuracy of each Monthly Report submitted; and

        A.2(c).  A cashier's check or checks made payable to the "Construction Laborers Trust Funds for Southern California" totaling the full amount of Monthly Contributions due to the Trust Funds for the previous month.

    B.    For reasonable attorneys' fees and costs of suit, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

    C.    For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

DATED: March 6, 2025        REICH, ADELL & CVITAN
                                      A Professional Law Corporation

                                  By:  /s/ Aaron G. Lawrence
                                          AARON G. LAWRENCE
                                          Attorneys for Plaintiff